UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. CROSSWHITE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. EDCV 11-1972 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Kenneth G. Crosswhite filed this action on December 16, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on January 11 and 13, 2012. (Dkt. Nos. 8, 9.) On September 21, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses and remands the decision of the Commissioner for further proceedings consistent with this opinion.

# I.

# PROCEDURAL BACKGROUND

On October 18, 2007, Crosswhite filed an application for disability insurance benefits, alleging an onset date of November 6, 2005. Administrative Record ("AR") 19, 112. The application was denied initially and upon reconsideration. AR 19, 71-72. Crosswhite requested a hearing before an Administrative Law Judge ("ALJ"). AR 88. On November 4, 2009, the ALJ conducted a hearing at which Crosswhite and a vocational expert testified. AR 36-70. On November 24, 2009, the ALJ issued a decision denying benefits. AR 16-32. On October 20, 2011, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Crosswhite meets the insured status requirements through December 31, 2010. AR 21. The ALJ found that Crosswhite has the following severe combination of impairments: degenerative disc disease of the lumbosacral spine, osteoarthritis of the cervical spine, tendinosis in the right shoulder with degenerative changes in the acromioclavicular joint and a subchondral cyst, partial tears of the supraspinatus and inferiorspinatus articulating surfaces of the left shoulder with degenerative changes in the acromioclavicular joint with subacromial bursitis, a depressive disorder, and a passive aggressive personality disorder. AR 22.

Crosswhite has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently. AR 23. He is limited to occasional postural activity, except he is precluded from climbing ropes, ladders and scaffolds, and must avoid workplace hazards such as dangerous machinery and unprotected heights. *Id.* He is limited to simple repetitive tasks. *Id.* He cannot perform his past relevant work but there are jobs, such as packer, assembler and gluer, that exist in significant numbers in the national economy that he can perform. AR 30-32.

### C. Medical Evidence

Crosswhite contends that the ALJ did not properly consider the medical evidence.

The ALJ noted that no medical source opined that Crosswhite was no longer capable of working. AR 27. However, the ALJ acknowledged that the objective medical evidence from Dr. Anguizola, Dr. De La Llana and Dr. Larsen "would suggest the presence of significant low back impairments warranting greater residual functional capacity limitations." AR 25. The ALJ generally discounted these workers compensation reports because workers compensation reports are "generated in association with the prosecution of adversarial litigation"; Crosswhite selectively failed to offer into evidence a workers compensation report by a chiropractor, Norman Corlew, who concluded he was capable of essentially medium exertion; and there are no "meaningful medical treatment records." AR 24-25. For the ALJ, these factors created "a substantial concern regarding the reliability of this medical evidence." AR 24. The ALJ then addressed the specific physician reports.

### 1. Legal Standard

"[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam) (ALJ may discount solicited opinion inconsistent with physician's notes and unsupported by objective medical evidence); *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ may reject solicited opinion unsupported by medical findings, observations or test results). An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a

treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (quotation marks and citations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the treatment relationship and frequency of examination;[1] (2) nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. §§ 404.1527(d), 416.927(d).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 632. An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation marks omitted). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* at 1164 (citation omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

5

omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

"When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Id.* at 956-57 (citation and quotation marks omitted).

### 2. Dr. Anguizola

Crosswhite contends Dr. Anguizola is a treating physician. Dr. Anguizola saw Crosswhite twice and recommended additional treatment. JS 8; AR 243, 250-51; *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) (physician who saw claimant twice within 14-month period, prescribed medication and referred to him as "my patient" was treating physician). The Commissioner does not disagree.

Dr. Anguizola provided two pain management evaluation reports dated May 22 and July 23, 2007. AR 240-45, 246-52. Dr. Anguizola noted reduced range of motion in Crosswhite's lumbar spine, significant pain at the L3 level, and positive straight leg-raising, Patrick's, Lasegue, and Fabere tests, bilaterally, which the ALJ found to be indicative of impingement. AR 24, 242, 249-50. Dr. Anguizola diagnosed Crosswhite with bilateral lumbar facet arthropathy with radiculopathy. AR 24, 243, 250. With respect to the cervical spine, Dr. Anguizola noted reduced range of motion, spasm, tenderness, which the ALJ found to be indicative of nerve root involvement. AR 25, 242, 249. Dr. Anguizola diagnosed Crosswhite with cervical strain with myofasciitis. AR 25, 250. Dr. Anguizola did not provide an assessment of functional limitations.

### 3. Dr. De La Llana

Dr. De La Llana examined Crosswhite on July 26, 2007, reviewed medical records and provided a neurological consultative report. AR 24, 272-76. Dr. De La Llana reported that Crosswhite limps on the right leg. AR 273. She found tenderness over the paracervical musculature and reduced range of motion of approximately 30% in the cervical spine. All other tests of the upper extremities were negative. AR 274.

1  She noted a normal EMG of the cervical spine and upper extremities with chronic
2  denervation potentials in the APB muscle on the right. AR 25, 279. She found
3  electrical evidence of carpal tunnel syndrome, moderate on the right and mild on the
4  left. AR 281. There was no evidence of cervical radiculopathy or any other focal
5  peripheral nerve compression. *Id.*

6  Dr. De La Llana noted that the thoracic spine was not tender and did not have a
7  reduced range of motion. AR 274. She found tenderness of the paralumbar
8  musculature, sacroiliac joints and sciatic notches of the lumbar spine. She found that
9  range of motion was reduced approximately 40%. *Id.* Straight leg raising was 80
10 degrees, with 50 degrees on the right and 60 degrees on the left in a supine position.
11 Fabere's test was negative. *Id.* She found atrophy in Crosswhite's right calf. *Id.*
12 Electrodiagnostic studies indicated electrical evidence of lumbosacral (L5-S1)
13 radiculopathy, but no focal peripheral nerve compression. AR 283. She found chronic
14 denervation potentials in muscles innervated by lumbosacral (l5-S1) nerve roots
15 consistent with lumbosacral (L5-S1) radiculopathy. AR 24, 286.

16 Dr. De La Llana did not provide a functional assessment. AR 272-86.

17 **4.    Dr. Larsen**

18 On April 28, 2009, Dr. Larsen, a board certified orthopedic surgeon, provided an
19 orthopedic consultative report. AR 502-32. Dr. Larsen reviewed Crosswhite's medical
20 records. Dr. Larsen found some tenderness and reduced range of motion in
21 Crosswhite's lumbar and cervical spine with no spasm. AR 24-25, 509. Dr. Larsen
22 found tenderness and reduced range of motion in Crosswhite's shoulders with no
23 evidence of atrophy. AR 26, 509-10. Dr. Larsen diagnosed cervical strain, lumbar disc
24 bulging, bilateral shoulder impingement syndrome with acromioclavicular joint pain,
25 bilateral carpal tunnel syndrome, depression, insomnia, and status post bilateral
26 herniorrhaphy. AR 26, 527-28.

27
28

Dr. Larsen rated Crosswhite at the DRE (diagnosis related estimates) Lumbar Category II level[3] given his examination and "lack of any loss of structural integrity of the lumbar spine." AR 529. Within this range, he rated Crosswhite at a 6% whole person impairment (WPI) level.[4] *Id.* Dr. Larsen noted that an August 2007 MRI of the lumbar spine showed 1 mm disc bulges from L2 down to S1.[5] AR 528.

Dr. Larsen rated Crosswhite at the DRE Cervical Category II level given his examination and the lack of any alteration in the structural integrity of the cervical spine. AR 529. Within this range, he rated Crosswhite at a 6% WPI level. *Id.* Dr. Larsen noted that an August 2007 MRI of the cervical spine showed evidence of osteophytes but no stenosis.[6] AR 528.

With respect to the left shoulder, Dr. Larsen found an 8% WPI based on loss of range of motion in flexion, extension, abduction, and internal rotation. AR 530. As for the right shoulder, Dr. Larsen found a 4% WPI based on loss of range of motion in flexion, extension, and abduction. *Id.* Taking into account the electrodiagnosic testing results performed by Dr. De La Llana, Dr. Larsen found a combined 14% impairment of the left upper extremity and 12% impairment of the right upper extremity. *Id.*

---

[3] Dr. Larsen used the American Medical Association Guide to the Evaluation of Permanent Impairment Fifth Edition. AR 529. This Guide is used in California's Workers Compensation system. *See* State of California, *Schedule for Rating Permanent Disabilities* 1-3 (Jan. 2005).

[4] There are five DRE Lumbar categories, I-V. Category II correlates to a 5%-8% WPI.

[5] The ALJ noted that the August 2007 MRI of the lumbar spine (which he mistakenly cited as August 2008) was unremarkable except for small disc protrusions at L2-S1, without signs of nerve root or spinal cord involvement. AR 25, 200.

[6] The ALJ noted that the August 2007 MRI study of Crosswhite's cervical spine showed small osteophyte ridges at C4-7, without any signs of nerve root or spinal cord involvement. AR 25, 266-68. A December 22, 2007 x-ray of the cervical spine indicated mild degenerative disease from C3 through C6. AR 25, 311.

1    Dr. Larsen concluded that Crosswhite is a qualified injured worker for vocational
2    rehabilitation and recommended evaluation by a vocational expert. AR 27, 530.

### 5.    Analysis

The ALJ stated that the findings of Dr. Anguizola, Dr. De La Llana and Dr. Larsen "would suggest the presence of significant low back impairments warranting greater residual functional capacity limitations." AR 25. The ALJ did not state what RFC limitations would be appropriate if their opinions were accepted.

As discussed above, the ALJ discounted the reports generally due to his concern about the reliability of workers compensation evidence. AR 24-25. In addition, the ALJ found that greater limitations were unwarranted based on three reasons: (1) the results were not reproduced by Dr. Altman, the state agency consultant who examined Crosswhite; (2) imaging studies showed minimal abnormalities in the lumbosacral spine without any evidence of spinal cord or nerve root involvement; and (3) lack of significant medical treatment records. AR 24-25.

Crosswhite's alleged failure to identify and offer into evidence Corlew's report is not a legitimate reason to discount the physicians' opinions. AR 24. Dr. Larsen spent over five single-spaced pages describing Corlew's report and explained why he found Corlew's ratings for neck and low back pain to be "frankly absurd." AR 520-26, 529. Crosswhite's primary treating chiropractor, Dr. Larson, also provided a detailed description of Corlew's findings and explained why he believed those findings could not be squared with the objective medical evidence. AR 542-47, 552. The ALJ did not address or undermine the reasons given. The other two physicians examined Crosswhite before Corlew and obviously could not comment on Corlew's findings.

Moreover, at the hearing, the ALJ observed Crosswhite "doesn't seem clear on what doctors he's seen." AR 58. The ALJ questioned whether Crosswhite had been to an AME (agreed medical examiner). Crosswhite's counsel responded that Crosswhite had been to see a chiropractor named Corlew. *Id.* The ALJ's finding that the claimant failed to identify Corlew is therefore not supported by the record. When counsel

identified Corlew, the ALJ did not request a copy of the report and relied on the detailed description of Corlew's findings in the record. AR 59; *see* AR 24, 520-26. The ALJ elsewhere noted that chiropractors are not acceptable medical sources. AR 27. The ALJ's adverse inference is not supported by substantial evidence.

The ALJ's finding that Crosswhite did not produce meaningful treatment records, as distinguished from workers compensation records, is unclear. Crosswhite's "primary treating physician" was Dr. Larson, a chiropractor. AR 533. He states that in order to provide treatment to cure or relieve Crosswhite's injuries, and provide an accurate AMA WPI required by workers compensation guidelines, he referred his patient to various providers over a period of several years. AR 533-52.

The ALJ noted that the state agency physician, Dr. Altman, did not reproduce findings indicative of impingement. AR 25. Dr. Altman did not indicate he reviewed any medical records. AR 307-10. Dr. Altman observed Crosswhite had a slight antalgic gait on the right leg and moved sluggishly on the table. AR 308. Crosswhite had full cervical range of motion but reduced range of motion in the flexion and extension of the thoracolumbar spine. *Id.* He had some tenderness in the lower cervical spinous processes, and overall tenderness in the thoracic and lumbar paraspinals with slight spasm in the right midthoracic region. AR 25, 308-09. His straight leg raising was 90 degrees while sitting. In the supine position, Crosswhite had 70 degrees on the left and 30 degrees on the right. AR 309. Range of motion of the shoulders was within normal limits. AR 26, 308. Dr. Altman found Crosswhite capable of light work. AR 310.

The ALJ cited a neurological evaluation by Dr. Altman in September 2007. AR 25. Dr. Altman found "some slight decreased range of motion" of the cervical spine, some spasm, and tenderness in the cervical paraspinals and trapezius left greater than

1 right. AR 375.  Crosswhite had decreased range of motion of the left shoulder.  *Id.*  The
2 EMG of the upper extremities was within normal limits.[7]  AR 373.

3      The ALJ noted that the imaging studies indicated at most minimal abnormalities
4 in the lumbar spine, and Dr. Altman could not reproduce the positive straight leg raising
5 found by Dr. Anguizola.[8]  AR 25.  Similarly, the ALJ noted that imaging studies of the
6 cervical spine noted mild degenerative changes, with mixed and inconsistent clinical
7 findings.[9]  AR 26.

8      However, to the extent that the ALJ discounted Dr. Larsen's opinions, the ALJ's
9 reasons are not supported by substantial evidence in the record.  Dr. Larsen's opinions
10 relied upon the same imaging studies along with an independent clinical examination in
11 April 2009.  The ALJ accurately stated that Dr. Larsen did not include an assessment of
12 Crosswhite's functional limitations.[10]  AR 27.  As discussed above, Dr. Larsen identified

---

[7] As Crosswhite argues, the EMG report notes that "conventional EMG and nerve conduction studies cannot test small sensory fibers which, when relatively irritated, may underlie pain and paresthesias arising from within 'named' peripheral nerves, soft tissues and bony structures, and sensory roots."  AR 373.  Crosswhite argues that he may experience spasms and limited range of motion even with normal EMG and nerve conduction studies.  JS 7.

[8] Contrary to Crosswhite's argument, there are inconsistent findings between Drs. Anguizola and De La Llana.  Whereas Dr. Anguizola found a positive Fabere test on July 23, 2007, Dr. De La Llana noted a negative Fabere test on July 26, 2007.  AR 242, 274.  Whereas Dr. Anguizola found positive straight leg raising at 60 degrees, Dr. De La Llana found positive straight leg raising at 80 degrees.  AR 242, 274.  Dr. Altman noted that Crosswhite performed straight leg raising at 90 degrees on December 22, 2007.  AR 309.

[9] Whereas Dr. Anguizola found reduced range of motion and spasm, Dr. Larsen found reduced range of motion with no spasm.  AR 242, 509.

[10] The ALJ acknowledges that the workers' compensation and Social Security programs are two distinct programs.  *See Desrosiers v. Sec. of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (Under California's workers' compensation guidelines, work capacity is not based on strength but on whether a claimant sits, stands or walks most of the day.  The categories of work under the Social Security Act "are measured quite differently.  They are differentiated primarily in step increases in lifting

11

impairments in Crosswhite's shoulders. The ALJ acknowledged MRI studies of Crosswhite's left and right shoulders showing shoulder abnormalities, but observed that Drs. Anguizola, De La Llana, and Altman did not note any shoulder abnormalities in 2007. AR 26.

However, the May 18, 2011 orthopedic agreed medical evaluation, which was made a part of the record by the Appeals Council,[11] contained work restrictions. The evaluation indicated some reduced range of motion in the cervical spine with muscle guarding and no spasm; reduced range of motion in the shoulders; decreased motor strength of the left shoulder musculature; crepitation of the left shoulder; normal range of motion in the thoracic spine; reduced range of motion of the lumbosacral spine with muscle guarding and no spasm; negative straight leg raising in both sitting and supine positions; negative Patrick's and Lasegue tests; and no evidence of radiculopathy in the lower extremities. AR 576-77, 579-81, 583, 588-89. X-rays of the lumbar spine showed mild degenerative changes. AR 583-84. Dr. Luciano diagnosed cervical strain, left shoulder impingement, lumbar disc disease and hernia/groin pain by history. AR 584.

The evaluation assessed the following work restrictions: Crosswhite is precluded from "repetitive above-shoulder-level heavy work" and "heavy lifting and repetitive bending." AR 589. Dr. Luciano recommended vocational rehabilitation. AR 592. Crosswhite would require future medical care in the form of orthopedic evaluations, anti-

---

capacities."); *see also Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (Terms of art used in workers' compensation proceedings are not equivalent to Social Security disability terminology.).

[11] These documents were made a part of the record by the Appeals Council. AR 5. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence") (citation omitted). Crosswhite also submitted Kaiser treating records for the period July 2003 through December 2006 and Life Chiropractic Center records for the period January 2006 through June 2008. AR 659-88.

inflammatory medications, possible physical therapy treatment not to exceed three to four weeks, and possible referral to pain management for possible limited number of cortisone injections to the left shoulder. AR 592-93. For Crosswhite's lumbar spine, he should have access to a possible limited number of epidural/facet injections. AR 593.

The agreed medical evaluation in May 2011, only five months after the close of Crosswhite's insured status, is consistent with and provides significant support for Dr. Larsen's assessment in April 2009. The ALJ's finding that Dr. Larsen's opinion "lacks substantial medical support when the record is viewed as a whole" is incorrect. AR 27. The fact that Dr. Altman did not see shoulder impairment in December 2007 does not mean that Crosswhite's shoulder issues did not worsen and become symptomatic in the April 2009-May 2011 time frame.

This matter is remanded for reconsideration of Crosswhite's RFC in light of the work restrictions assessed by the agreed medical evaluation dated May 18, 2011.

### D. Credibility

Crosswhite contends the ALJ failed to articulate legally sufficient reasons for rejecting his subjective symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what

testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ gave Crosswhite's allegations "limited weight" for three reasons: (1) lack of treatment; (2) inconsistencies in Crosswhite's statements and actions; and (3) lack of supporting objective medical evidence. AR 29-30.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch*, 400 F.3d at 681. The medical evidence may not support the degree of limitation asserted by Crosswhite even after taking into account the work restrictions assessed by Dr. Luciano. Regarding bilateral carpal tunnel syndrome, the ALJ noted electrodiagnostic testing in July 2007 was consistent with bilateral carpal tunnel syndrome, but Crosswhite did not report any hand or wrist symptoms to Dr. Anguizola just three days prior to the electrodiagnostic testing. AR 22, 240-45, 281. Further, a neurology examination taken at the same time as the electrodiagnostic testing failed to confirm the existence of carpal tunnel syndrome. AR 22, 379. The ALJ noted that Crosswhite was diagnosed with a sleep disorder, but the record contains no evidence that Crosswhite took sleep aids or that a sleep disorder affected his ability to work. AR 22-23, 340. The ALJ noted that Crosswhite has not received any specialized psychiatric treatment or care, and Dr. Francisco, a Qualified Medical Examiner who performed a psychological evaluation, found him to be only slightly impaired. AR 24, 304.

However, as this matter is being remanded for reconsideration of the RFC assessment in light of the work restrictions assessed by the agreed medical evaluation dated May 18, 2011, the ALJ is free to reconsider Crosswhite's credibility. The ALJ is cautioned that although a claimant's credibility may be discounted based on lack of treatment records, benefits "'may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.'" *Orn*, 495 F.3d at 638 (citation and internal quotation marks omitted). Crosswhite testified that his employer canceled his

1  insurance and dismissed him a year after surgery.  AR 55.  He was unable to get
2  medical treatment through the county because he is a homeowner.  AR 57.  He paid for
3  a chiropractor through June 2008 and submitted those records to the Appeals Council.
4  AR 56, 660-65.  The ALJ also noted that Crosswhite made inconsistent statements
5  regarding his work history because he reported that he worked on a full-time basis from
6  1982 to 2005, while his earnings record during 1991, 1994, 1995 and 1996 were
7  "limited and spotty." AR 30.  Crosswhite, however, testified that he worked "off and on"
8  between 1982 and 1994.  AR 44, 140.

## IV.
## CONCLUSION

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for reconsideration of Crosswhite's RFC assessment in light of the agreed medical evaluation dated May 18, 2011.  The ALJ is free to reconsider Crosswhite's credibility on remand.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 10, 2013

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

15